## Dickerson, Appellant, *v.* American Credit-Indemnity Company of New York.

Argued October 13, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ralph S. Croskey,* with him *George J. Edwards, III,* for appellant.

*Sidney E. Smith,* for appellee.

OPINION BY PARKER, J., December 18, 1936:

This is an action in assumpsit brought to recover an amount claimed to be due on an insurance policy described as one of credit indemnity. The plaintiff claimed the defendant owed him the sum of $3,000 under the terms of the policy, while the defendant admitted that there was due the sum of $2,200 which it has paid to plaintiff, leaving in controversy the sum of $800 with interest. The basic facts are not in dispute and all appear in the pleadings. Judge BROWN in the

court below refused a motion for judgment for want of sufficient affidavit of defense and when the cause came to trial before a jury, Judge KUN, after proof of the facts by the pleadings, followed the ruling of Judge BROWN and directed a verdict for defendant. The plaintiff has appealed, complaining of the entry of judgment for defendant and of the refusal of his motion for judgment n. o. v. We are all of the opinion that the decisions of the judges in the courts below were correct.

The sole question presented to us on this appeal involves an interpretation of the terms of the policy of indemnity issued by defendant. The policy provides that defendant "Hereby guarantees [plaintiff] ......against loss, to an amount not exceeding $3,000......due to insolvency, ......of debtors, which insolvency shall occur within the term beginning the 1st day of April, 1928 and ending the 31st day of March, 1929 ......and which loss is covered, proven and allowed, as hereinafter stipulated. From the aggregate net loss, ascertained in adjustment as hereinafter provided, there shall be deducted ten per cent. (10%) thereof as co-insurance, and from the remainder an agreed Normal Loss of 5/10ths of One per cent., to be borne by the Indemnified, upon the total gross sales so made during said term; less (a) all allowances actually made on said sales during the said term and (b) the invoiced price of any of said sales returned and accepted by the Indemnified during said term; but such Normal Loss so to be deducted shall be not less than $500.00; and the remainder, if any, not exceeding the amount of this Policy, shall be the amount payable by the Company."

The coverage of the policy and the method of adjustment of losses are set forth in detail in the conditions and stipulations attached to and made a part of the policy and are as follows: "2.—Coverage—No loss is covered by this Policy, unless the debtor to whom the goods were shipped and delivered shall have in the

latest published book of the Bradstreet Mercantile Agency, at the date of the shipment, a capital rating and its accompanying credit rating, as tabulated below ......The aggregate gross amount covered on the indebtedness to the Indemnified of any one debtor shall not exceed the amount owing by the debtor, nor exceed the amount set opposite the corresponding rating of the debtor in the subjoined 'Table of Ratings and Coverage.'" As the claim in this case arises from the insolvency of but one debtor we give only the capital rating and coverage with which we are concerned and which are as follows:

"TABLE OF RATINGS AND COVERAGE
(Bradstreet Mercantile Agency)

| Capital Rating [Higher ratings omitted] | | | Second Credit Rating | Gross Amount Covered |
|---|---|---|---|---|
| ...... | ...... | ...... | ....... | ............ |
| R 35,000 | ...... | ...... | C | $3000." |

"8.—METHOD OF ADJUSTMENT—To ascertain the net loss in any adjustment under this Policy, there shall be deducted from each gross loss covered and proven under this Policy: (1) All amounts collected thereon and all amounts which may have been obtained from any other source; (2) The invoiced price of goods returned or replevined, when such goods are in the undisputed possession of the Indemnified; (3) All amounts mutually agreed upon as thereafter obtainable." [Provision is then made for cases where the credit rating is changed or there is no credit rating, with which we are not concerned.] "After making the deductions provided for under (1), (2) and (3) hereof from each gross loss covered and proven under this Policy, there shall be added to the remainder the regular collection fees charged by the Company on said deductions. The result shall be the net loss. From the aggregate amount of the net covered and proven losses

thus ascertained, there will be deducted: (first), ten per cent. (10%) thereof, as co-insurance; (second), the agreed Normal Loss; and the remainder, not exceeding the amount of this Policy, will, less any unpaid amount due the Company, be the amount due and payable to the Indemnified."

It is conceded that the plaintiff suffered a single loss of $4,057.19 during the term of the policy by reason of the insolvency of a debtor, the James G. Downard Company, whose capital rating by Bradstreet was "R" and whose credit rating was "C".

With the description of coverage furnished by paragraph 2 and the method of adjustment supplied by paragraph 8, we have a definite formula which is explicit and enables us to determine the precise amount due by defendant to plaintiff. The plaintiff by reason of the insolvency of Downard Co. suffered a financial loss of $4,057.19, but that sum was not the aggregate gross amount *covered* by the policy for it stipulated that it covered only $3,000 of the indebtedness of any one debtor who had the rating which that company enjoyed. The defendant in effect said to plaintiff: "A customer who has a 'Capital Rating' of 'R—35,000', and a 'Second Credit Rating' of 'C' is only entitled to a credit of $3,000. If you extend a credit beyond that amount the excess is not covered by the policy, that is your affair and we are not concerned in it." Now applying this data to the formula furnished by paragraph 8 there is no difficulty in ascertaining the net loss made under the policy as well as the amount to which plaintiff is entitled.

We start with "each gross loss covered by the policy" and find there is but one loss and only $3,000 of that one loss is covered by the policy. There were no amounts collected, no goods returned and no amounts agreed upon as thereafter obtainable to be deducted and as there were no collection fees to be added, the

*net* loss *covered* by the policy was $3,000. The policy however very definitely provides that such net loss shall not be the amount to be paid by defendant, but from the "aggregate amount of the net covered and proven loss" is to be deducted 10% and a "normal loss of $500". The result is $2,200.

The basic error in appellant's argument is in assuming the loss covered by the policy to be $4,057.19 when the policy distinctly provides that it does not cover any loss suffered in excess of the "gross amount covered" on one debtor. Plaintiff had no more right to bring into the equation any loss suffered by reason of excess credit extended to Downard Company than he would have had to include a loss suffered as a result of a sale to one who had no commercial rating. Neither of such claims was *covered* by the policy. Our conclusion is fortified by the careful use of the phrases "aggregate gross amount covered on the indebtedness of any one debtor", "net loss", "each gross loss covered and proven" and the final provision that the net loss shall be subjected to certain deductions—a species of co-insurance—to determine the amount that is payable by defendant. We find no ambiguity in the formula and consequently may not resort to rules governing situations where the meaning is doubtful. The parties made the contract and must be held to it.

Judgment affirmed.